UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Berkley National Insurance Company, *a/s/o* *Lakes Community Cooperative*, | File No. 23-cv-454 (ECT/LIB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Broan-Nutone, LLC, | |
| Defendant. | |

Michelle D. Hurley, Yost & Baill, LLP, Minneapolis, MN, for Plaintiff Berkley National Insurance Company.

Timothy J. Carrigan, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, MN, for Defendant Broan-Nutone, LLC.

A fan manufactured by Defendant Broan-Nutone caused a fire at a convenience store. The store's insurer, Plaintiff Berkley National Insurance Company, paid the claim and brought this case as subrogee. Broan seeks summary judgment. The motion will be granted because Berkley has not identified evidence that would permit a reasonable jury to find the fan was defectively manufactured.

I

The fire occurred November 20, 2021, at a Cenex convenience store in Mahnomen, Minnesota. ECF No. 31-1 at 4. A Broan-manufactured ventilation fan was installed in the ceiling of the women's restroom. *See id.* at 68–69. The fan was comprised of a motor, a steel enclosure, a vertical metal shaft, plastic blades (which also are referred to as an

"impeller"), and a plastic cover. *Id.* at 51. The fan's motor was comprised of a rotor and four coils of copper windings. *Id.* at 52. And the motor included a protective thermal-cutout device intended to open the electrical circuit and de-energize the fan if the fan were exposed to, or operating at, a sufficiently high temperature. *Id.* at 52–53. The fire originated in the fan's motor. *Id.* at 25; *see also id.* at 50. Berkley insured the convenience store's owner, Lakes Community Cooperative, against property damage. ECF No. 1 ¶ 6. In response to the Cooperative's claim, Berkley paid $2,549,713.32 for fire-related damages. *Id.* ¶ 11.

Berkley brought this case as the Cooperative's subrogee. In its Complaint, Berkley asserted claims for negligence, *id.* ¶¶ 12–15 (Count I), breach of warranty, *id.* ¶¶ 16–19 (Count II), and strict products liability, *id.* ¶¶ 20–29 (Count III). To support its negligence claim, Berkley alleged that Broan failed to exercise reasonable care in designing, manufacturing, and inspecting the fan, and in providing consumers with warnings, instructions, and advice regarding the fan. *See id.* ¶¶ 13–14. To support its breach-of-warranty claim, Berkley alleged that Broan "expressly and impliedly warranted . . . that [the fan] would be manufactured with due care and skill in a workmanlike manner, free from defects, fit for a particular purpose, and of merchantable quality." *Id.* ¶ 17. Berkley claimed that the various defects alleged to support its negligence claim showed that "Broan breached these implied and express warranties." *Id.* ¶ 18. To support its strict-liability claim, Berkley alleged the fan was "defective and unreasonably dangerous" because it was defectively designed, defectively manufactured, and "malfunctioned due to no other possible cause than a defect." *Id.* ¶ 27(a)–(c). Berkley also alleged Broan "failed to warn"

2

of the fan's defects and "failed to properly instruct" regarding the fan's safe installation, use, and maintenance. *Id.* ¶ 27(d)–(e).

Through its briefing and at the hearing on Broan's summary-judgment motion, Berkley narrowed the case to strict-liability and negligence claims based on just a defective-manufacturing theory. How this occurred deserves a brief explanation. (1) In support of its summary-judgment motion, Broan argued that Berkley's breach-of-warranty claims were time-barred. *See* ECF No. 30 at 13–14. In its response brief, Berkley "concede[d] that it does not have a viable breach of warranty claim." ECF No. 33 at 7. And Berkley confirmed at the hearing that this is no longer a breach-of-warranty case. (2) In its response brief, Berkley argued it had submissible negligence and strict-liability claims based on a design-defect theory. ECF No. 33 at 13–17. At the hearing, however, Berkley disclaimed a design-defect theory. As a rough transcript and the Court's notes of the hearing indicate, Berkley confirmed it was "not making a design defect argument," but rather was "making a manufacturing defect argument." For these reasons, a design-defect theory is no longer part of the case. (3) Though Berkley's Complaint includes allegations directed at failure-to-warn and failure-to-instruct liability theories, *see* ECF No. 1 ¶¶ 14(a)(5), 14(c), 27(d), 27(e), Berkley clarified at the hearing that it no longer asserts a claim based on a failure-to-warn or failure-to-instruct theory. The question, then, is whether Berkley's remaining claims for strict liability and negligence under just a manufacturing-defect theory are trial-worthy.

II[1]

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Begin with a description of Minnesota law governing manufacturing-defect claims generally.[2] Under Minnesota law, "[t]he elements of a products liability claim are that (1) a product was in a defective condition unreasonably dangerous for its intended use; (2) the defect existed at the time the product left the defendant's control; and (3) the defect

---

[1] There is subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a). This is not evident from Berkley's Complaint. In its Complaint, Berkley alleges it is an Iowa citizen. ECF No. 1 ¶ 3. Though Broan is a limited-liability company and "[a]n LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members," *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007), Berkley did not allege the citizenship of Broan's members in its Complaint. Regardless, in response to a show-cause order regarding subject-matter jurisdiction, Berkley filed a paper showing that Broan's sole member is a corporation that is a citizen of Delaware and Missouri. ECF No. 7-1 at 2, 6. And the amount in controversy far exceeds § 1332(a)'s threshold. *See* ECF No. 1 at 6–7 (seeking judgment "in an amount of $2,549,713.32, plus costs, interest," and other relief).

[2] There is no reason to question the parties' agreement to apply Minnesota law. *See Neth. Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) ("Because the parties do not dispute the choice of Minnesota law, we assume, without deciding, Minnesota law applies . . . .").

4

proximately caused the plaintiff's injury." *Boda v. Viant Crane Serv., LLC*, 42 F.4th 935, 938–39 (8th Cir. 2022) (alteration in original) (quoting *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. Ct. App. 2004) (citing *Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 623 n.3 (Minn. 1984))); *see Am. Fam. Ins. Co., S.I. v. Pecron, LLC*, No. 21-cv-1749 (KMM/DJF), 2023 WL 8654202, at *6 (D. Minn. Dec. 14, 2023) ("To prevail on a manufacturing defect claim under Minnesota law, a plaintiff must show that the product was defective because it departed from its intended design; it was in that defective condition when it left the defendant's control; and the defect proximately caused the plaintiff's damages."). "[T]he core of a manufacturing-defect case is some manufacturing flaw—some deviation from a flawless product—that renders a product unreasonably dangerous." *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1147 (D. Minn. 2011) (citing *Bilotta*, 346 N.W.2d at 622); *see Pecron, LLC*, 2023 WL 8654202, at *6 ("The crux of the claim is that the product, as provided to the public, was defective because the manufacturing, assembly, inspection, packaging, or testing processes failed to turn out the product intended by the defendant manufacturer." (quoting *Johnson v. Zimmer, Inc.*, No. 02-cv-1328 (JRT/FLN), 2004 WL 742038, at *10 (D. Minn. Mar. 31, 2004)). "If a dangerous manufacturing flaw existed and resulted from negligence, a plaintiff could in theory recover in negligence; if a dangerous flaw existed but did *not* result from negligence, a plaintiff could recover in strict liability." *Kapps*, 813 F. Supp. 2d at 1147.

To establish these elements, Berkley relies on the opinion of an electrical engineer, Lucas Choudek. *See* ECF No. 31-1 at 15–27. As Mr. Choudek explained in his report and

deposition testimony, his opinion is that "electrical arcing"[3] occurred in the fan's motor windings, generating heat that in turn ignited "nearby combustible materials including electrical insulation, and any accumulated dust and lint." *Id.* at 26; *see also id.* at 60 ("**Q** All right.  So according to your theory, the electrical arcing in the windings of the bath fan caused dust or lint to ignite; correct?  **A Yeah.**").[4]  Mr. Choudek also opined that the fan's "thermal protection device did not operate as intended and failed to disconnect electrical power" before the fire.  *Id.* at 26.  And in his deposition—though not in his report—Mr. Choudek testified in response to a question from Berkley's counsel that the fan's thermal-cutout device was installed in a non-standard way that might cause a solder joint to crack or break, in turn affecting the fan's operating temperature.  *Id.* at 66.

These opinions do not create a trial-worthy manufacturing-defect claim.  The opinions that electrical arcing occurred and ignited nearby dust and lint show the fan malfunctioned.  They do not address why the fan malfunctioned.  They do not, in other words, tether the malfunction to a manufacturing defect or show how the at-issue fan deviated from a flawless product.  Mr. Choudek confirmed the absence of this connection during his deposition.  There, he acknowledged that he did not know what caused the fan to operate at a high temperature.  *Id.* at 61 (**Q** Okay.  It's your opinion that the -- prior to

---

[3]  An electrical arc is a luminous discharge between an energized conductor and a grounded conductor.  ECF No. 31-1 at 55.  The two conductors are not connected.  The electrical current runs through the air between them.

[4]  In his report, Mr. Choudek opined that "[t]he insulation breakdown of motor winding allowed electrical shorting and faulting to occur."  ECF No. 31-1 at 26.  In his deposition, however, Mr. Choudek seemed to testify that the motor's copper windings were not insulated when the fan was manufactured originally.  *See id.* at 52.

the ignition of this fire, the bath fan motor was operating at an abnormally high temperature, but you do not specifically know the mechanical reason why. Is that a fair statement? **A Yes.**"). And Berkley acknowledged in its response brief that "why the motor failed" is an "unknown[]." ECF No. 33 at 8. This issue aside, Mr. Choudek's opinions regarding electrical arcing do not show the defect existed when the at-issue fan left Broan's control.

Because it was not in Mr. Choudek's report, his opinion regarding the thermal-cutout device's installation cannot be considered. Mr. Choudek acknowledged he did not address this issue in his report. ECF No. 31-1 at 66 (**Q** Mr. Choudek, does your written report mention anything about a possible error in the installation of the TCO that was in the electric motor of the Broan bath fan? **A I don't think so.**). Rule 26(a)(2)(B)(i) requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). And "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." *Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1065 (D. Minn. 2012) (quoting *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)). In *Ciomber*, the Seventh Circuit explained that "[t]he purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert will testify, and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony." 527 F.3d at 642 (citations omitted). Under Rule 37, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

7

hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (noting exclusion is a "self-executing sanction unless the party's failure to comply is substantially justified or harmless"). Here, Berkley acknowledged that the expert's report says nothing regarding the thermal-cutout device's installation, ECF No. 33 at 13, and Berkley did not explain why the failure to include this information might have been justified or harmless.

If it were considered, Mr. Choudek's opinion regarding the thermal-cutout device's installation would not justify submitting Berkley's manufacturing-defect theory to a jury because the theory is speculative. In his testimony regarding this opinion, Mr. Choudek explained that he had not seen installation instructions for the thermal-cutout device in the Broan fan. ECF No. 31-1 at 66. He would have been guessing, in other words, to say that the thermal-cutout device had been installed incorrectly in the at-issue fan. This problem aside, Mr. Choudek testified only that the thermal-cutout device's installation might lead to a crack or break in a solder joint that would, in turn, affect the fan's operating temperature. *Id.* He did not testify that sequence occurred here. *See id.* Consistent with this understanding of Mr. Choudek's opinion, Berkley acknowledged in its response brief that "why the [thermal-cutout device] failed to operate as intended" is an "unknown[]." ECF No. 33 at 8.

This case is a lot like *Pecron*. There, a plaintiff sued on a manufacturing-defect theory regarding a generator that allegedly caused a fire. 2023 WL 8654202, at *1. Judge Menendez granted the defendant's summary-judgment motion because the plaintiff failed to show that the generator's cells departed from their intended design or that the defendant

8

employed substandard manufacturing processes. *Id.* at *6–7. Here, as in *Pecron*, Berkley has identified no evidence showing the fan's intended design, how the at-issue fan deviated from that design, or how the process Broan employed to manufacture the at-issue fan was substandard. Without this evidence, a jury would be required to speculate regarding the possibility of a manufacturing defect. *Id.* at *7 (citing *Nat'l Bank of Com. of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999)).

Berkley advances several arguments to show its manufacturing-defect theory is trial-worthy, but these arguments are not persuasive. Citing a Minnesota Court of Appeals case—*Graffunder v. Toyota Motor Sales U.S.A., Inc.*, No. A09-563, 2010 WL 274203 (Minn. Ct. App. Jan. 26, 2010)—Berkley argues it need only show the Broan fan was "deficient" and that evidence showing the fan "caught on fire . . . could certainly be viewed by the jury as a deficiency." ECF No. 33 at 8–9. This is not convincing because a defect alone does not create a triable strict-liability case under Minnesota law. A plaintiff pursuing a manufacturing-defect theory must show, among other things, that "the defect existed at the time the product left the defendant's control," *Boda*, 42 F.4th at 938–39, and represented "some deviation from a flawless product," *Kapps*, 813 F. Supp. 2d at 1147 (citing *Bilotta*, 346 N.W.2d at 622). Berkley hasn't shown either of these elements. And *Graffunder* defined "defect," not for a strict-liability case, but as the word was intended in a Toyota express warranty for a Minnesota Lemon Law case. *Graffunder*, 2010 WL 274203, at *6. It would be a mistake to read *Graffunder* as saying that a reasonable jury could find a manufacturing defect based on just a deficiency in a sued-on product.

9

Berkley's argument that its manufacturing-defect claim is trial-worthy based just on evidence the fan caught fire sounds like an invocation of *res ipsa loquitur*, but the doctrine does not fit this case's facts. As the Eighth Circuit explained in *Boda*:

> "[I]n some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a prima facie case." *Dewitt v. London Rd. Rental Ctr., Inc.*, 910 N.W.2d 412, 414 n.2 (Minn. 2018) (quotation omitted). For the doctrine to apply, a plaintiff must prove: "(1) that ordinarily the injury would not occur in the absence of negligence; (2) that the cause of the injury was in the exclusive control of the defendant; and (3) that the injury was not due to plaintiff's conduct." *Hoven v. Rice Mem'l Hosp.*, 396 N.W.2d 569, 572 (Minn. 1986).

42 F.4th at 939. And, the *Boda* court explained, "[p]roving negligence on a theory of *res ipsa loquitur* is difficult. Minnesota law requires that a plaintiff 'reasonably eliminate[] improper handling by others' as a potential cause of the accident." *Id.* at 940 (alterations in original) (quoting *Holkestad v. Coca-Cola Bottling Co. of Minn., Inc.*, 180 N.W.2d 860, 865 (1970)). "[W]here lapse of time and substantial opportunity for mishandling of a product by third parties make it equally probable that a defective condition developed after leaving the defendant's control, neither the principles of res ipsa loquitur nor strict liability will support a finding of liability." *W. Sur. & Cas. Co. v. Gen. Elec. Co.*, 433 N.W.2d 444, 449 (Minn. Ct. App. 1988). No case has held the burden to show the defect existed when it left the manufacturer's control was "discharged merely by proof that the plaintiff had not mishandled the product." *Cerepak v. Revlon, Inc.*, 200 N.W.2d 33, 35 (Minn. 1972). Here, according to a verified interrogatory response from Berkley, the fan was installed before the Cooperative took ownership of the store in 2009. ECF No. 31-1 at 45, 47. Berkley

10

cites no evidence reasonably eliminating mishandling or other like occurrences during that period as a potential cause of the accident.[5] That issue aside, Mr. Choudek opined that "accumulated dust and lint" ignited from heat generated by the fan. *Id.* at 26. Berkley identifies no evidence showing that dust and lint were present when the fan left Broan's control, or that any manufacturing defect caused the accumulation of dust and lint.

Berkley cites five manufacturing-defect cases involving Broan-manufactured fans in which courts denied summary-judgment motions. ECF No. 33 at 12 (first citing *Nationwide Mut. Fire Ins. Co. v. Broan-Nutone, LLC*, No. 20-cv-678 (BAH), 2022 WL 4547948 (D.D.C. Aug. 19, 2022); then citing *Ky. Farm Bureau Mut. Ins. Co. v. Broan-Nutone, LLC*, No. 1:11CV-66-JHM, 2013 WL 5740107 (W.D. Ky. Oct. 22, 2013); then citing *Am. Nat'l Prop. & Cas. Co. v. Broan-Nutone, LLC*, No. 5:18-CV-5250, 2020 WL 3578024 (W.D. Ark. July 1, 2020); then citing *Hartford Ins. Co. v. Broan-Nutone, LLC.*, No. 02 C 6043, 2004 WL 842516 (N.D. Ill. Apr. 19, 2004); and then citing *Metlife Auto & Home v. Broan-Nutone, LLC*, No. 1:08-cv-1089 (GLS/DRH), 2011 WL 3736550 (N.D.N.Y. Aug. 24, 2011)). Berkley says these cases support the denial of Broan's motion here because they were factually similar and decided under Minnesota-like law. I do not agree.

---

[5] Mr. Choudek concluded the fan was manufactured in 2014. ECF No. 31-1 at 51. There is no indication Berkley supplemented or amended its verified interrogatory response. Regardless, for purposes of *res ipsa loquitur*, whether the time gap between the fan's installation is twelve or more years (if the fan was installed when the Cooperative took ownership of the store) or perhaps seven years (if the fan was manufactured in 2014 and installed soon after) makes no difference.

11

At least four of the cases apply legal rules different from Minnesota's. In *Nationwide Mutual Fire Insurance Co.*, the court applied District of Columbia law equating causation and defect and held that, by showing only that the fan caused the fire, the plaintiff showed a manufacturing defect. 2022 WL 4547948, at *6. The court in *Kentucky Farm Bureau Mutual Insurance Co.* appears to have applied the same rule under Kentucky law, finding that a plaintiff shows a manufacturing defect "if Plaintiff's proof rules out all other causes of the fire other than the fan." 2013 WL 5740107, at *6. In *American National Property & Casualty Co.*, the court applied an Arkansas rule excusing plaintiffs from "prov[ing] a specific defect when common experience tells us that the accident would not have occurred in the absence of a defect." 2020 WL 3578024, at *5 (quotation omitted). And in *Hartford Insurance Co.*, the court applied Illinois law and found a manufacturing-defect submissible based only on evidence "that the range hood failed to perform in the manner intended." 2004 WL 842516, at *4. Berkley has cited no Minnesota case applying any of these rules, and I understand Minnesota law to require more.

In the fifth case, *Metlife Auto & Home*, the court applied a New York rule allowing manufacturing-defect plaintiffs who fail to prove a specific defect to nonetheless prevail by "exclud[ing] all causes that are not attributable to the manufacturer's conduct." 2011 WL 3736550, at *6. Whatever this rule's precise meaning, Berkley has cited no Minnesota case applying it. If Minnesota applied this rule, Berkley has not explained how the record here meets it. To be fair, the evidence in *Metlife Auto & Home*, as far as the court described it, seems comparable to what we have here. As the court described the record in that case,

> plaintiffs . . . offered evidence and testimony demonstrating that the fan/light contained a manufacturing defect in the form of intercrossed wires, that the defect generated an inordinate amount of heat that ignited the debris and plastic present in the fan motor, and that the fire originated at the site of the defect.

2011 WL 3736550, at *7. If this described the entire record, and if New York and Minnesota law were comparable, I would reach a different outcome. The court did not explain how the evidence showed that "intercrossed wires" were a manufacturing defect as opposed to something else. Nor did it explain how the plaintiff had "excluded all causes that are not attributable to the manufacturer's conduct." *Id.* at *6.

For all these reasons, Broan's summary-judgment motion will be granted.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Broan-Nutone, LLC's Motion for Summary Judgment [ECF No. 28] is **GRANTED**.

2. Plaintiff Berkley National Insurance Company's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 31, 2025                               s/ Eric C. Tostrud
                                                    Eric C. Tostrud
                                                    United States District Court